# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**GREGORIO HERNANDEZ-DURON,**

      **Petitioner,**

**vs.**                                   **No. 12-cv-00966 JB/SMV**

 **RAY TERRY, et al,**

      **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Petitioner's Petition Under 28 U.S.C. § 2241 For A Writ of Habeas Corpus, filed on September 14, 2012 [Doc. 1]; Respondents' Response, filed on October 30, 2012 [Doc. 8]; and Petitioner's Reply, filed on November 15, 2012 [Doc. 10]. Petitioner was released from custody on November 8, 2012. *See* [Doc. 10] at 4. After careful consideration of the pertinent law and pleadings, I respectfully recommend that the Petition be **DENIED AS MOOT**.

## PROCEDURAL HISTORY

On August 19, 2010, Petitioner pleaded guilty in federal court to an Information charging him with violating 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i), Transporting Aliens for Financial Gain. Crim Doc. 8.[1]  On November 29, 2010, Petitioner was sentenced to eight months of imprisonment. Crim Doc. 22. He was instructed to surrender to the Bureau of Prisons

---

[1] References to documents from the underlying criminal case (Western District of Texas, Criminal No. 10-2216) will be annotated as "Crim Doc." and the docket number.

on or before February 4, 2011, at 2:00 PM.  *Id.* at 2.  He failed to do so, and an arrest warrant was issued on February 8, 2011.  Crim Doc. 26.  Petitioner was then arrested on October 27, 2011.  Crim Doc. 35.

On May 11, 2012, Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255, arguing that his attorney was constitutionally ineffective.  Crim Doc. 47.  That motion was denied because it was filed well after the one-year deadline imposed by statute.  Crim Doc. 48. Petitioner filed a second Motion to Vacate under 28 U.S.C. § 2255 on June 7, 2012, making similar claims of ineffective assistance of counsel.  Crim Doc. 56.  On July 20, 2012, the Fifth Circuit denied Petitioner authorization to file a successive § 2255 motion.  *In re: Gregorio Hernandez-Duron*, 12-50564, Doc. 511928239 (5th Cir. 2012).

Petitioner filed this § 2241 petition on September 14, 2012. [Doc. 1]. He raises four issues in his petition: (1) that his designation as an arriving alien violates his right to due process; (2) that his detention in New Mexico amounts to forum shopping; (3) that ineffective assistance of counsel led him to plead guilty to a crime he did not commit; and (4) that he was not advised of the immigration consequences of his plea.  [Doc. 1] at 3-7. He was deported on November 8, 2012, i.e., after Respondents filed their Response. *Compare* Petitioner's Reply [Doc. 10] at 4 ("However, the Petitioner was unlawfully deported yesterday, November 8, 2012…."), *with* Respondents' Response [Doc. 8], filed on October 30, 2012.

## ANALYSIS

The Court has jurisdiction of this § 2241 petition because Petitioner was confined in New Mexico at the time he filed the petition.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); *United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of

habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").  The purpose of the writ of habeas corpus is to release the applicant from unlawful confinement. *E.g., Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980). Thus, release from detention typically renders a petition moot. *See Ortiz-Soledo v. Terry*, No. Civ. 10-0210 JCH/KBM, Order Dismissing Petition as Moot (D.N.M. May 18, 2010) [Doc. 12] (Herrera, J.) (citing pertinent cases).  However, that is not always the case. The petition may survive the petitioner's release, but only if it meets one of the exceptions to the mootness doctrine.  *See Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002).

> We will not dismiss a petition as moot if (1) secondary or "collateral" injuries will survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal process but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Id.* at 1256–57 (internal citations and quotation marks omitted).

Petitioner asserts that his Petition satisfies the first exception, i.e., collateral injury:

> The Petitioner now claims prejudice and an injury that this Court should also address and because his removal order should not suppose [sic] to render moot, his habeas petition. See Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004). So the Petitioner claims that he has a legally cognizable collateral consequence that preserves a live controversy even after deportation of the Petitioner.

Reply [Doc. 10] at 5. It is unclear to what "collateral consequence" Petitioner refers. Nor is it clear how he believes *Zalawadia* helps him. It does not.

Jaysukh Zalawadia was a native and citizen of India. In 1995, he pleaded guilty to a charge of burglary and felony theft and was sentenced to two years' probation and required to pay restitution. At the time, his guilty plea had no immediate effect on his immigration status.

Under the Immigration and Nationality Act (INA) as it then existed, conviction of those offenses did not render him subject to deportation. *Zalawadia,* 371 F.3d at 294. His convictions did create the possibility that he could be rendered inadmissible should he leave the country and attempt to re-enter. Under INA § 212(a)(2)(A)(i)(I), a lawful permanent resident who had been convicted of a "crime of moral turpitude" would be deemed inadmissible should he leave the United States and later seek reentry. However, the Supreme Court had interpreted that condition only to apply to travel outside the United States that was not "brief, casual or innocent." *Id.* (quoting *Rosenberg v. Fleuti*, 374 U.S. 449 (1963)). In addition, the INA contained a provision granting the Attorney General of the United States broad discretion to admit aliens who were otherwise excludable on the basis of prior criminal conviction.

The passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996 had two specific effects on Zalawadia's immigration status. First, the IIRIRA superseded the rule announced in *Fleuti*, as interpreted by the Board of Immigration Appeals (BIA), so that a lawful permanent resident could be barred from reentry regardless of whether his travel outside the United States was "brief, casual or innocent." *Zalawadia*, 371 F.3d at 295. Second, the IIRIRA repealed § 212 of the INA, which gave the Attorney General discretion to grant waivers to aliens who were excludable based on prior criminal convictions. *Id.*

Zalawadia left the country for a brief business trip in 1998. Upon his return, he was designated an arriving alien and was issued a Notice to Appear charging him with inadmissibility as a result of his 1995 convictions. The immigration judge ordered him removed. *Id*. Zalawadia appealed to the BIA. He argued that he was entitled to claim eligibility for a waiver under the old

4

INA § 212. The appeal was dismissed because the BIA found that the IIRIRA's repeal of § 212 of the INA should be applied retroactively. *Id.* Zalawadia applied for a writ of habeas corpus, arguing that his detention and removal orders were illegal because the BIA had improperly applied retroactively the provisions of the IIRIRA. The petition was dismissed. Zalawadis appealed to the Fifth Circuit Court of Appeals. While his appeal was pending, he was deported. The Fifth Circuit dismissed his appeal. Zalawadia filed a petition for a writ of certiorari with the Supreme Court, which was granted. *Id.*

On remand, the district court found that Zalawadia was not entitled to habeas relief because the deportation order did not violate his rights under the INA. Zaladawia appealed to the Fifth Circuit again, arguing that the district court should not have addressed the merits of his claim for eligibility for relief, but should have remanded the matter to the BIA. He asked the Fifth Circuit to remand the case to the district court with instructions to remand it to the BIA, directing the BIA to consider his claims under § 212 of the old INA.

On appeal—by which time Zalawadia had been removed—the government argued that the district court lacked jurisdiction because Zalawadia's claim was rendered moot as a result of his removal. *Id.* at 298. The Fifth Circuit held that the claim was not moot because collateral consequences of the deportation order existed:

> Here, it is undisputed that Zalawadia's deportation bars him from seeking reentry into the United States for a period of five years. See 8 U.S.C. § 1182(a)(9)(A)(i). This penalty constitutes a cognizable collateral consequence; as such his petition presents a live controversy and is not moot.

*Id.* at 298. The Fifth Circuit further held that the district court had jurisdiction to grant habeas relief, but that the limit of such relief was to vacate the deportation order. *Id.* at 301.

Thus, to summarize, Mr. Zalawadia had not been subject to deportation under the old INA, despite his convictions. The INA was changed by the passage of AEDPA and IIRIRA. The BIA incorrectly applied the new laws retroactively to Mr. Zalawadia, designated him an arriving alien, and ordered him deported. The collateral consequence *of that deportation order* was to make him ineligible to seek reentry into the United States for a period of five years. By vacating the deportation order, the Fifth Circuit remedied that collateral consequence.

The case at bar presents a different scenario. Petitioner is not claiming that the law under which he was designated an arriving alien was incorrectly applied to him retroactively. He pleaded guilty to transporting illegal aliens on August 19, 2010, long after the passage of AEDPA and IIRIRA. Unlike the situation in *Zalawadia*, vacating the deportation order would not remedy the collateral consequences; so long as his conviction stands, he would be considered an arriving alien if he attempted to reenter the United States. *See* 8 U.S.C. § 1101(a)(13)(C)(iii). What he seeks is relief from his conviction, something that cannot be accomplished through a § 2241 petition.[2] The terms of 8 U.S.C. § 2255 provide the exclusive avenue for an attack on a federal conviction or sentence. *See Baker v. Sheriff of Santa Fe County*, 477 F.2d 118, 119 (10th Cir. 1973).

I find that Petitioner has not shown that his petition meets any of the exceptions to the mootness doctrine. Accordingly, I recommend that the Petition be **DENIED AS MOOT.**

---

[2] Petitioner's pro-se characterization of his claims is not dispositive. *See Roman-Nose v. New Mexico Dep't of Human Serv.*, 967 F.2d 435, 436–37 (10th Cir. 1992).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**